**UNITED STATES, Appellee,**

v.

**Edgardo CRUZ–RIJOS, Private First Class, U. S. Army, Appellant.**

**No. 30,908.**

U. S. Court of Military Appeals.

June 25, 1976.

*Captain Richard E. Schmidt* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel James Kucera, Captain Michael R. Caryl, Captain John M. Nolan,* and *Captain Edward E. Shumaker, III.*

*Captain Gary F. Thorne* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen* and *Major John T. Sherwood, Jr.*

3. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

## OPINION OF THE COURT

FLETCHER, Chief Judge:

We granted review to determine whether the requirements of Article 54(b) and (c), Uniform Code of Military Justice, 10 U.S.C. § 854(b) and (c), were satisfied in the post-trial processing of the appellant's special court-martial. The record of trial reflects that the prosecutor authenticated the 156-page transcript "in the absence of the military judge" after making in excess of 800 *ex parte* corrections. In addition, neither the accused nor his counsel was provided with a copy of the record of trial until August 15, 1974, almost a month after the transcript was authenticated and a week after the convening authority took his action pursuant to Articles 60 and 64, UCMJ, 10 U.S.C. §§ 860, 864.

### I

Article 54(b), UCMJ, provides that "[e]ach special . . . court-martial shall keep a separate record of the proceedings . . . [which] shall be authenticated in the manner required by such regulations as the President may prescribe." In accordance with this delegation of authority, the President promulgated paragraph 82 *f,* Manual for Courts-Martial, United States, 1969 (Rev.), which states:

*Authentication.* The record in each case shall be authenticated by the signature of the military judge who was actually present at the conclusion of the proceedings. If the record cannot be authenticated by the military judge by reason of his death, disability, or absence, it shall be authenticated by the signature of the trial counsel who was actually present at the conclusion of the proceedings or by that of a member if the trial counsel is

unable to authenticate it by reason of his death, disability, or absence. In a court-martial consisting of only a military judge the record shall be authenticated by the court reporter under the same conditions which impose such a duty on a member under this paragraph.

Appellant urges that the trial counsel's "cryptic notation" that the military judge was absent "is utterly insufficient to meet the requirement contemplated by paragraph 82f." In support of this contention, appellate defense counsel point to an affidavit filed by the records custodian in the staff judge advocate's office at Fort Lee, Virginia, the situs of trial. The affidavit indicates that the military judge in the instant case was, in fact, present and presiding over other courts-martial 12 days after the trial counsel authenticated the record of trial and remained "present at Fort Lee [for] at least 10 days prior to the action of the convening authority." The defense also notes that the trial judge in this case was assigned to hear cases both at Fort Lee and at Fort Eustis and hence was required to spread his time between the two installations. Such a circumstance, in appellant's view, should not be construed as an "absence" under the Manual's authentication provision.

Government counsel do not dispute the appellant's factual assertions. Rather they contend that authentication of the record in a timely fashion benefits not only the appellant but also the entire appellate process. In this vein, the Government has directed our attention to a military judge's memorandum [1] from the chief of the Army's trial judiciary which, in pertinent part, instructs:

If the local staff judge advocate determines that the trial judge will be unavail-

---

1. The memorandum upon which the Government relies was rescinded subsequent to our hearing of oral argument in this case. The basis for the recission was an opinion issued by the Judge Advocate General of the Army which observed that "policy considerations make it desirable to have all records of trial authenticated by the military judge. He is the most impartial and usually . . . the most qualified to review the record of trial. Furthermore,

his authentication of the record of trial avoids the possible 'appearance of evil' that may arise if the officer who prosecuted the case also verifies the accuracy of its record." This latest judge's memorandum suggests that "[j]udges should authenticate records of trial unless the delay in obtaining authentication will create a palpable risk of dismissal of cases under the *Dunlap* rule."

able to authenticate the record for more than 48 hours after completion by the court reporter because of travel, mailing delays, or other absence, he may request the trial counsel or court reporter to authenticate the record of trial in accordance with paragraph 82f.

In addition, the Government suggests that there is "no reason to believe that the trial counsel would conduct himself in other than a most upright fashion in dealing with this job of authenticating the record since he is an officer of the court."

As noted by government counsel, speedy appellate disposition has been and remains a matter of particular concern to this Court, and it is of substantial importance in the administration of military justice. *See Dunlap v. Convening Authority,* 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974). However, in setting the appellate pace, we must not lose sight of the ultimate objective of the process, to assure a fair and orderly appellate review of trial proceedings. Speed for speed's sake is a hollow gesture if it results in a failure fully to comply with the congressionally-mandated review process. *See* Articles 60, 64, 66, and 67, UCMJ, 10 U.S.C. §§ 860, 864, 866, 867. Stated differently, the integrity of the judicial process, both actual and perceived, must also be preserved. Thus, a balancing of these competing interests often is required.

In striking the appropriate balance, the importance of the neutrality element in relation to the function performed is significant. In this regard, it must be borne in mind that the heart of a criminal proceeding is the trial transcript. As was so aptly stated by Senior Judge Ferguson, "If we cannot be sure the records before us are authentic, our review is meaningless." *United States v. Harris,* 21 U.S.C.M.A. 123, 130, 44 C.M.R. 177, 184 (1971) (Ferguson, S. J., concurring in part and dissenting in part). The importance of the neutrality aspect with respect to the issue before us is highlighted by the difficult burden the accused bears in challenging the accuracy of the contents of the record of trial once authenticated. This Court long has fol-lowed the prevailing rule in the civilian community "that the records and judgments of the trial court import absolute verity and may not, in the absence of a charge of fraud, be challenged." *United States v. Galloway,* 2 U.S.C.M.A. 433, 435, 9 C.M.R. 63, 65 (1953).

Without casting aspersions on the integrity of the trial counsel, it nevertheless must be remembered that his primary function is that of a partisan advocate. Thus, to eliminate any appearance of impropriety, the judicial inclination necessarily leans toward restricting his performance of judicial functions to emergency situations. Indeed, the "death, disability, or absence" language of paragraph 82f of the Manual lends itself to such an interpretation even though, out of context, the word "absence" might have a far broader meaning.

■ Finally, the realities of present-day practice by trial judges must be considered. With reductions in the size of our armed forces, trial judges necessarily are called upon more and more to spread their time between various military installations. Sanctioning the 48-hour unavailability standard utilized in this case would, in effect, substantially relieve most rotating trial judges of their statutory authentication responsibilities. The prosecutor would thereby assume such duties under present procedure. We join the Judge Advocate General in finding such an approach to be unduly detrimental to the perceived fairness of the military justice system as a whole and the integrity of the authentication process in particular. In view of the military judge's presence at the situs of trial within a reasonable time after the court reporter completed the transcript, and because, in our opinion, the utilization of the trial judge to authenticate the record would not have resulted necessarily in a violation of the *Dunlap* speedy disposition standard, we conclude that the "absence" provision of paragraph 82f, MCM, was impermissibly invoked by the trial counsel.

**432**

## II

Appellant further challenges the Government's failure to provide him with a copy of the trial transcript as altered by the prosecutor before the convening authority took his action. In addition to citing Article 54(c), UCMJ, which mandates that "[a] copy of the record of the proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated," appellate defense counsel also have directed our attention to paragraph 82-e, MCM, which directs the trial counsel, after making corrections in the transcript and prior to the convening authority's action, to forward the record to the defense counsel for examination "[w]hen undue delay will not result." Coupling the trial counsel's substantial number of revisions with the deprivation of the appellant's right to file with the convening authority an Article 38(c) brief [2] with the benefit of a transcript, appellate defense counsel suggest that this Court require service on the accused's counsel of the record of trial together with the staff judge advocate's review prior to action by the convening authority. *See United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). Such a standard was promulgated by the Army Court of Military Review over a year ago in applying the test for prejudice to a verbatim transcript issue. *United States v. Wormley,* CM 431296 (A.C.M.R.1975). Since the Judge Advocate General declined to publish that decision in the Court-Martial Reports for the benefit of Army practitioners bound by the mandates of the Court of Military Review,[3] government counsel have suggested that our adoption of such a standard should be prospective in light of an earlier published Court of Military Review decision which held "there is no requirement . . . that an accused be given a copy of the record of trial prior to the convening authority's action or prior to the submission of his [Article 38(c)] brief." *United States v. Noreen,* 48 C.M.R. 228, 236 (A.C.M.R.1973), *aff'd on other grounds,* 23 U.S.C.M.A. 212, 49 C.M.R. 1 (1974).

■ The argument need not detain us for the language of Article 54(c) is clear: "A copy of the record of proceedings of each general and special court-martial shall be given to the accused *as soon as it is authenticated.*" (Emphasis added.) The Government erred in failing to provide the appellant with a copy of the record of trial "as soon as it [was] authenticated" under the plain language of the statute. The Code clearly contemplates that the transcript will be served on the accused well before action by the convening authority since such action may not precede authentication. *United States v. Shurley,* 44 C.M.R. 683 (A.C.M.R.1971); *United States v. King,* 44 C.M.R. 680 (A.C.M.R.1971).

■ In cases in which the accused has been transferred or confined at a location different from that of his trial defense counsel, we believe the Government may satisfy the spirit of Article 54(c), while also assuring effective representation of the accused, by serving the transcript on his counsel together with a copy of the staff judge advocate's review in accordance with the guidelines set forth in *United States v. Goode, supra.*

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge

---

**2.** Article 38(c), Uniform Code of Military Justice, 10 U.S.C. § 838(c), provides:

In every court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceedings, a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he considers appropriate.

**3.** Authority to publish Army Court of Military Review decisions was subsequently given to the Chief Judge of that Court by the Judge Advocate General of the Army on December 18, 1975. Believing, as we do, that all courts have inherent authority to order the publication of their decisions to assure that their mandates are satisfactorily implemented, the Judge Advocate General's action signifies a proper concern on his part that promulgation of judicial acts be determined by the judicial entity rendering the decision. *See* ABA Standards, Appellate Courts § 3.37(d) (Tent. Draft, 1976).

Advocate General of the Army. After proper authentication of the record, a new review and action by the same or a different convening authority is ordered.

Judges COOK and PERRY concur.